# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENT S. and ANGIE S., individually and as representatives of the class of similarly situated individuals,<br><br>     PLAINTIFFS,<br> vs.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.,<br><br>     DEFENDANT. | CIVIL ACTION<br>NO. 1:17-cv-11569-ADB<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## I. SUMMARY OF GROUNDS TO DENY BCBSMA'S MOTION TO DISMISS

This is an ERISA welfare-benefits suit seeking equitable relief against Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA" or "Defendant"), under Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) and Section 502(a)(3), 29 U.S.C. § 1132(a)(3) seeking "other equitable relief." Plaintiffs Brent S. ("Brent"), and Angie S. ("Angie") (collectively "Plaintiffs") and their son Jake are beneficiaries under a health plan provided by Brent's employer.

The bases for Plaintiffs' suit is two-fold: **First Cause of Action** to enforce the proposed class members' rights under the BCBSMA administered plans and provide benefits to Plaintiffs and all other similarly situated beneficiaries; and **Second Cause of Action** to secure an injunction ordering BCBSMA to cease its systemic practice of categorically denying coverage for mental health residential treatment for participants under the age of 19 when the program includes an educational component, and to reprocess wrongly denied claims of similarly situated beneficiaries. Plaintiffs expect to prove that similar ERISA governed BCBSMA health benefit plans (the "Class Plans") create an exception for adolescents under the age of 19, who require extended inpatient residential treatment. In addition to mental health or substance abuse treatment, these adolescents also must keep up on their schooling. The Class Plans recognize that residential treatment for adolescents requires not allowing beneficiaries to fall behind their peers in their educational progress. As discussed below, this is also consistent with Utah law.

With this in mind, the language of the Class Plans state that medically necessary mental health residential treatment, that includes an educational component for individuals under the age of 19, will be covered by the Class Plans. However, BCBSMA did not administer the Class Plans in a way that provided benefits for adolescents receiving residential treatment that included

educational services. This class action is brought to rectify those wrongful claim denials, and to stop them from occurring in the future.

Here, Jake received medically necessary treatment at a residential treatment program, Ashcreek Ranch Academy ("ARA") in Utah. *See* Dkt. No. 41 *First Amended Complaint* ¶24[1]. ARA is licensed (Utah Code Ann. § 62A-3-101) by the Utah State Department of Human Services as a "residential treatment" program for adolescents needing inpatient mental health treatment, substance abuse treatment, or both. Under Utah law licensed residential treatment programs serving adolescents must provide an accredited educational program. *See* Utah Administrative Code, R501-19-12(A) and (B) (requiring residential treatment programs serving adolescents to provide for an accredited educational curriculum).

BCBSMA refused to pay for coverage. *See* Dkt. No. 41 ¶35. Brent appealed. *See* Dkt. No. 41 ¶36. BCBSMA denied the appeal. *See* Dkt. No. 41 ¶37. Plaintiffs paid out of pocket for Jake's treatment at ARA and BCBSMA has paid nothing. *Id*. This timely suit followed after Plaintiffs exhausted their pre-suit remedies. *See* Dkt. No. 41 ¶38.

In its Motion to Dismiss ("Motion")[2] BCBSMA posits four theories as to why the Court should dismiss, however each theory is more appropriately raised in a motion for summary judgment under the standards as implemented for ERISA welfare benefits litigation in this Circuit. Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), welfare-benefit cases are resolved on cross motions for judgment on a claim record, not on a motion to dismiss. *See e.g. Doe v. Harvard Pilgrim Health Care, Inc.*, 904 F.3d 1, 10 (1st Cir. 2018) ("a motion for summary

---

[1] All "¶__" citations herein are to paragraphs in Plaintiffs' First Amended Complaint. Dkt. No. 41.
[2] Defendant's Motion made no attempt to challenge the nationwide class action nature of the allegations.

judgment in an ERISA case…is simply a vehicle for teeing up the case for decision on the administrative record"). Plaintiffs' separate claim arising under Section 502(a)(3), 29 U.S.C. § 1132(a)(3), will survive an attack under Rule 12(b)(6) so long as there is no duplicative recovery. *See, e.g. Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (noting that "[a]t the motion to dismiss stage ... it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief," and therefore a "district court should generally not dismiss a § 1132(a)(3) claim as duplicative of a claim for benefits at the motion to dismiss stage of a case.") (internal quotation marks and citation omitted). And given that the First Circuit has not tackled this issue, "the reasoning of the Second, Eighth and Ninth Circuits [are] persuasive." *Trovato v. Prudential Insurance Company of America*, 2018 WL 813368, at *3 (D. Mass. 2018).

## II. THE CLASS PLANS COVER MEDICALLY NECESSARY MENTAL HEALTH RESIDENTIAL TREATMENT PROGRAMS FOR ADOLESCENTS INCLUDING THOSE PROGRAMS THAT PROVIDE AN EDUCATIONAL COMPONENT

The Class Plans cover mental health residential treatment. *See* Dkt. No. 41 ¶17. Despite the coverage, BCBMA claims that the Class Plans exclude mental health residential treatment services with an educational component, and cite this language in support:

> Some examples of services and programs that are not covered by this health plan are: services that are performed in educational…settings[.]… These types of noncovered programs may be in residential or nonresidential settings. They may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities. These programs may have educational accreditation. The staff may include some licensed mental health providers who may provide some therapy. No benefits are provided for any services furnished along with one of these non-covered programs. For example, no benefits are provided for therapy and/or psychotherapy furnished along with one of these non-covered programs.

*See* Exhibit A to Defendants' Motion, Dkt. No. 61-1, p. 33-34. *See* Dkt. No. 41 ¶18.

The Class Plans however have an explicit exception to this educational setting coverage limitation when the residential treatment is for an adolescent under the age of 19:

> No benefits are provided for … services that are performed solely for educational or developmental purposes. The only exceptions are for…treatment of mental conditions for enrolled dependents who are under age 19[.] (emphasis added).

*Id*. at p. 50. *See* Dkt. No. 41  ¶19.

When Jake entered treatment at ARA, he was 17 years old. *See* Dkt. No. 41  ¶32.  In the months before he entered the treatment program at ARA, Jake had assaulted his father, had been abusing drugs, had been under the supervision of a juvenile court and had just left treatment at an acute inpatient facility in Colorado. *See* Dkt. No. 41 ¶¶27-31. At all relevant times ARA was licensed, and still is licensed, by Utah as a residential treatment program under Utah Code Ann. § 62A-2-101.

Jake's parents sought coverage for their son's care from BCBSMA. *See* Dkt. No. 41 ¶34. Claims were submitted to BCBSMA. *Id*. BCBSMA denied these claims on shifting grounds. On February 25, 2015, BCBSMA denied Jake's claim for coverage of his treatment at ARA citing only language in the Plan excluding coverage providing in a "ranch program." The Plan does not define the term "ranch program."  *See* Dkt. No. 41, ¶35. *See also* Exhibit A. ("You have asked us to provide benefits for the services of a ranch program, which is a type of provider that is not included in your contract. Your plan does not cover the services of this provider whether or not they are medically necessary.").

On April 15, 2015 Brent appealed. *See* Dkt. No. 41¶36. BCBSMA again denied Jake's claim on May 14, 2015 in response to the appeal. *See* Dkt. No. 41¶37. *See* Exhibit B. (BCBSMA appeal denial letter). BCBSMA raised new grounds abandoning the "ranch program" exclusion, and for the first time asserted that the sole basis for the claim denial was because, "Ashcreek

Ranch Academy is a residential treatment and boarding school. Ashcreek Ranch Academy is not a covered type of provider on your . . . Plan." *Id*. BCBSMA then quoted the policy referencing the alleged coverage limitation for mental health services performed with an educational component and concluded "[w]e are not questioning the medical necessity of the service or making a medical judgment." *Id*.

BCBSMA's decision was wrong as the ARA was licensed with the Utah State Department of Human Services as a "residential treatment" program for adolescents needing inpatient mental health and/or substance abuse treatment. *See* Dkt. No. 41 ¶33. *See* Exhibit C. (Two licenses in place from the Utah State Department of Human Services during the time frame Jake was being treated at ARA). Utah's licensing statute defines residential treatment as follows:

> "Residential treatment" means a 24-hour group living environment for four or more individuals unrelated to the owner or provider that offers room or board and specialized treatment, behavior modification, rehabilitation, discipline, emotional growth, or habilitation services for persons with emotional, psychological, developmental, or behavioral dysfunctions, impairments, or chemical dependencies.

Utah Code Ann. § 62A-2-101.

Under the corresponding Utah regulations, residential treatment programs must provide an accredited educational program in order to be licensed as a resident treatment program. Utah Administrative Code, R501-19-12(A) and (B). Given that BCBSMA did not challenge that Jake's treatment was medically necessary and that Jake's care was provided at a licensed residential treatment facility that, as a matter of Utah law, must provide an accredited educational curriculum, BCBSMA's refusal to provide coverage violated the plain terms of the Class Plans since it ignored the adolescent exception to the educational setting exclusion.

## III. LEGAL STANDARD TO PREVAIL ON A RULE 12(b)(6) MOTION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). The reviewing court should draw all reasonable inferences in the plaintiff's favor, but may disregard legal conclusions and formulaic recitations of the elements of a cause of action. *Pollard v. Georgetown School District*, 132 F.Supp.3d 208, 218 (D. Mass. 2015). And the reviewing court may consider the "implications from documents attached to or fairly incorporated into the complaint…." *Id*. As explained in ERISA cases such as *Silva v. Metropolitan Life Ins. Co*., 762 F.3d 711, 726 (8th Cir. 2014), dismissing a claim on the pleadings for breach of fiduciary duty is usually premature. This case is not an exception. Plaintiffs have set-forth specific facts supporting their claim for breach of fiduciary duty against BCBSMA under ERISA Section 502(a)(3) and a distinct claim for Plan benefit coverage under Section 502(a)(1)(B).

## IV. PLAINTIFFS HAVE ASSERTED A CAUSE OF ACTION UNDER ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), DESPITE BCBSMA'S BLUSTER

ERISA welfare-benefits case are resolved on motions for summary judgment, or judgment on the record, and not on a motion to dismiss. Summary judgment serves as a vehicle for resolving the disputed benefit claim based on an administrative type of record. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005). Without an agreed upon record for the Court to act, dismissal is premature. Here, BCBSMA has filed a thinly veiled motion for summary judgment on the merits of Plaintiffs' claim, under the guise of a Rule 12(b)(6) Motion to Dismiss, with no administrative record citations, and careless attempts at factual development from publicly available sources.

Distilled to its essence, under the First Cause of Action, Plaintiff's seek to recover benefits due and enforce his rights under the terms of the Plan and for appropriate equitable relief in light of BCBSMA's refusal to provide coverage for Jake's treatment under Brent S.'s welfare benefit plan. Plaintiffs seek relief under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) and ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). This is a quintessential ERISA welfare benefits claim that may be resolved under these sections. *E.g. Doe v. Harvard Pilgrim Health Care, Inc.*, 904 F.3d 1 (1st Cir. 2018).

The ultimate resolution by the Court is likely to be on cross motions on an agreed upon class-wide administrative type record. However, as set forth *infra*, BCBSMA's combination of shifting positions and some startling false assertions merit discussion.

    **A. ERISA Fiduciaries May Not Raise New Defenses For The First Time In Litigation**.

It is black letter law that plan beneficiaries do not have to issue exhaust pre-suit appeals. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir.2008). On the other-hand ERISA plans must issue exhaust pre-suit or otherwise the plan violates full and fair review under the ERISA statute. *See Glista v. Unum Life Ins. Co. of America*, 378 F.3d 113 (1st Cir. 2004) (Plan could not raise new defense in litigation after Plan failed to assert defense in "communications to claimant during internal review process"); *see also Hatfield v. Blue Cross and Blue Shield of Massachusetts, Inc.*, 162 F.Supp.3d 24, 43 (D. Mass. 2016) (BCBSMA violated full and fair review under the ERISA statute and regulations by raising new defenses in litigation not communicated pre-suit).

Here BCBSMA first denied Jake's claim contending that ARA was an excluded "ranch" facility. *See* Dkt. No. 41 ¶35. Brent appealed. *See* Dkt. No. 41 ¶36. BCBSMA abandoned the

ranch defense[3] and then BCBSMA denied the appeal contending that ARA was a "boarding school" and was excluded from coverage. *See* Dkt. No. 41 ¶¶37, 39. In denying Plaintiffs' appeal based on the educational exclusion, BCBSMA failed to recognize the educational services exception to the exclusion for beneficiaries under the age of 19. But having abandoned the ranch exclusion in response to Jake's first appeal, Defendant accuses Plaintiffs of raising the adolescent exception to the educational exclusion for the "first time" in their amended complaint, and argues that the Court should dismiss the case because Plaintiffs failed to exhaust their administrative remedies. Motion at FN6. Given that BCBSMA did not raise the educational exclusion by categorizing ARA as a "boarding school" until its final post-appeal denial, Plaintiffs could not have addressed this issue in their appeal – ***only the ranch exclusion was mentioned in the initial denial***. *See* Exhibit A.

In addition to changing the basis for its denial during the internal appeal process, during this litigation BCBSMA are trying to add an additional denial basis, arguing that "Plaintiffs have not alleged, nor can they allege, that the services Ashcreek Ranch provided to Jake were covered by the Plan in the absence of the Recreational Exclusion." *See* Motion at 11-14. Defendants argue that regardless of the educational exclusion Plaintiff's claim would not have been covered. *Id*. But that was not the basis for BCBSMA's claim denial.

This attempt to "sandbag" (i.e. change the rationale for a denied ERISA claim in litigation) is a common tactic for which BCBSMA has been chastised previously by Judge Woodlock:

---

[3] BCBSMA recognized there was a good reason to abandon the "ranch program" language as the rationale to deny Jake's claim. If it had maintained its denial on this basis, it would have been in the untenable position of arguing that the fortuitous placement of the word "Ranch" in the title of the residential treatment program Jake was receiving treatment from was, without more, valid reason to deny his claim.

9

> The Hatfields could reasonably disregard the prior notice of contractual limitations, believing that they had complied with Blue Cross instructions on how to correct their claim. As such, it is unsurprising that the record is bare of evidence showing why this Burning Tree should not be excluded although it is out-of-state and is located on a ranch. This is precisely the kind of sandbagging with which the First Circuit was concerned: Blue Cross "set in motion a chain of events whose effect was to shift the targets that [claimant] was aiming for, and then penalize [claimant] for aiming at the first round of targets."

*Hatfield v. Blue Cross & Blue Shield of Massachusetts, Inc.*, 162 F. Supp. 3d 24, 38 (D. Mass. 2016) (quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 244 n. 21 (1st Cir.2006)).

BCBSMA's "sandbagging" in order to achieve the extraordinary remedy of securing a dismissal of this ERISA benefits case at the pleadings stage, should be rejected here as it was in *Hatfield*. It is the final rationale that an insurer asserts for denying an ERISA claim, not earlier arguments the insurer abandons, that courts are required to review and evaluate. *Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Companies*, 935 F.Supp.2d 278, 292 (D. Mass. 2013).

Digging itself deeper into the ERISA quagmire, BCBSMA incorrectly represents for the first time that ARA is not licensed as a mental health program under Utah laws. That assertion is demonstrably inaccurate.

### B. Contrary to BCBSMA's Claims, ARA's Residential Treatment License is For the Provision of Inpatient Mental Health and Substance Abuse Treatment.

BCBSMA incorrectly represents in its Motion that ARA is not licensed by the State of Utah as a mental health or substance abuse program but is some kind of "spiritual" or "self-help" center. BCBSMA asserts:

> Instead, matters subject to judicial notice reveal that Ashcreek Ranch is licensed for "Day Treatment" and "Residential Treatment," providing educational, spiritual, and self-help type treatment that is akin to recreational, personal development, and custodial care. *See* RJN Ex. E. It is not licensed as a mental health or substance abuse program. *See id.*, Exs. A-D (Utah's Department of

10

> Human Services' Office of Licensing's lists of licensed mental health facilities and substance abuse facilities, which do not identify Ashcreek Ranch); *Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (when documents attached to a complaint contradict its allegations, the document controls). As a result, Ashcreek Ranch does not and cannot meet the definition of "Mental Health Providers" in the Benefit Description, which include a "covered provider who is a mental health provider." *See* Ex. A at p. 13 (emphasis added); *see also Welp v. Cigna Health & Life Ins. Co.*, CASE NO. 17-80237-CIV-MIDDLEBROOKS, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017) (finding that a Utah wilderness program was not a covered psychiatric residential treatment facility); *Roy C. v. Aetna Life Ins. Co.*, 2:17-CV-1216, 2018 WL 4511972, at *3 (D. Utah Sept. 20, 2018) (same).

*See* Motion at 12.

BCBSMA's incorrect representation appears to be based solely on screenshots from the State of Utah's licensing search website using an incorrect search limiter. Had BCBSMA reviewed ARA's Utah licenses, Exhibit C attached hereto, which were submitted as an attachment to Jake's pre-suit appeal, and then reviewed Utah's residential treatment program statute and regulations cited in Jake's pre-suit appeal, BCBSMA would never have made such a significant error in its Motion. ARA is licensed by the State of Utah as a "RESIDENTIAL TREATMENT" program for "25 MALE YOUTH CLIENTS AGES 12-17 YEARS OLD." Exhibit C. As noted supra, p. 6, Utah's licensing statute defines "residential treatment" a 24-hour group living environment providing "specialized treatment" for persons with "emotional, psychological, developmental, or behavioral dysfunctions, impairments, or chemical dependencies." Utah Code Ann. §62A-2-101. Residential treatment does not have as its primary purpose educational services. However, educational services are mandatory component of the services residential treatment programs provide when treating adolescents. Utah Administrative Code, R501-19-12(A) and (B).

In addition, the error of BCBSMA's analysis is unmasked further when reviewing the governing statute since by law "'*residential treatment' does not include a [] boarding school*[.]" (emphasis added). *Id*. BCBSMA incorrectly conflates "residential treatment" with "boarding school" in its final denial letter. Exhibit B, p. 1 ("After considering your situation, we cannot approve his request to conduct a level one review for your stay because ARA is a residential treatment and boarding school"). But since ARA holds a residential treatment license, *it cannot also be a "boarding school" under Utah law*. Had BCBSMA performed more than a cursory search on Utah's licensing website using an incorrect search limiter, they would have discovered that "residential treatment" program licenses in Utah are for inpatient mental health/substance abuse programs, and are mutually exclusive to "boarding schools."

    C. **BCBSMA's Position That The Adolescent Exception To The Educational Exclusion Is Intended To Allow For Coverage Of Neuropsychological Testing Is Flawed, Since Neuropsychological Testing Is A Covered Service And Not Otherwise Excluded.**

Defendant attempts to explain away the adolescent exception to the educational exclusion by claiming that it is intended to cover testing such as neuropsychological testing in adolescents, and that is not a general adolescent exception to the educational setting exclusion. Motion at 5-6. ("Plaintiffs contend, however, that the narrow exception for 'treatment of mental conditions for enrolled dependents who are under age 19' (the 'Mental Condition Exception') should provide an exception to the Recreational Exclusion as well. But the Mental Condition Exception applies, for example, when a participant has a provider perform an educational test or evaluation (e.g., a neuropsychological test) for purposes of treating a mental condition. It is not an exception that extends to all mental health treatment provided in a residential or recreational setting that may also provide educational services, like Ashcreek Ranch.").

Of course Defendant's example assumes that neuropsychological testing is otherwise excluded under the Policy such that an adolescent exception to that exclusion can apply. ***But neuropsychological testing is not excluded***. *See* Exhibit A to Defendants' Motion, Dkt. No. 61-1, p. 32. "[N]europsychological assessment services" are expressly *included* in the policy as "Covered Services." *Id*. Therefore Defendant's assertion that the adolescent educational exception is meant to allow for coverage of neuropsychological testing in adolescents, which would otherwise be excluded, is totally inaccurate. This is just another reason why dismissal of this ERISA benefits matter at this stage of the pleadings would be premature – Defendant cannot at this stage articulate a rational view as to what the adolescent exception was intended for, if not to allow for residential treatment of adolescents with an educational component.

BCBSMA repeatedly argues that it never utilized the Class Plan language providing coverage for adolescent education services as a basis for denying Jake's care. But this misses the point. The Class Plan must be read as a whole to determine the coverage and exclusionary provisions (and exceptions to those exclusions) involving benefits for mental health and substance abuse treatment such as Jake's. The language of the adolescent exception to the educational exclusion sheds light on the meaning and scope of benefits available for mental health and substance abuse under the Class Plans. It cannot be ignored or wished away as BCBSMA seeks to have this Court do, at the pleading stage nonetheless.

BCBSMA also argues that Plaintiffs' interpretation defies "common sense" and is "nonsensical." Motion at 10. ("If Plaintiffs' newfound theory was correct, and the Mental Condition Exception required coverage for all mental health treatment provided in an educational or recreational setting, the Recreational Exclusion would be nullified.") However, that is not at all what Plaintiffs allege. The inpatient residential treatment exception to the educational

exclusion (not the entire "Recreational Exclusion" at that term is used by Defendant) would *only* apply to those under the age of 19. Defendant's feigned misunderstanding of Plaintiffs' allegations ignores that the exception only applies to adolescents who need to continue with schooling even when faced with an extended inpatient residential treatment stay for treatment of mental conditions.

Lastly, BCBSMA relies on *Stephanie C. v. Blue Cross Blue Shield of Massachusetts. HMO Blue, Inc.*, 852 F.3d 105 (1st Cir. 2017) in arguing that the ruling of the First Circuit in that case applies to justify or support dismissal of Brent and Angie's claims. BCBSMA is wrong because in *Stephanie C.* the First Circuit was not faced with the language of the adolescent exception to the educational exclusion. The question presented in this case is a matter of first impression regarding the interpretation of the Class Plans.

## V.   PLAINTIFFS HAVE ASSERTED A CAUSE OF ACTION UNDER ERISA SECTION 502(A)(3), 29 U.S.C. §1132(A)(3) AS AN ALTERNATIVE GROUNDS FOR RELIEF

Section 502(a)(3), 29 U.S.C. § 1132(a)(3) will survive an attack under Rule 12(b)(6) so long as there is no duplicative recovery. *See, e.g. Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (noting that "[a]t the motion to dismiss stage ... it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief," and therefore a "district court should generally not dismiss a § 1132(a)(3) claim as duplicative of a claim for benefits at the motion to dismiss stage of a case.") (internal quotation marks and citation omitted). *see also N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2016), *cert. denied sub nom. UnitedHealth Grp., Inc. v. Denbo*, 136 S. Ct. 506 (2015) (holding dismissal of a Section 502(a)(3) ERISA claim is premature where the plaintiff "has not

yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy"); *Moyle v. Liberty Mut. Retirement Ben. Plan,* 823 F.3d 948 (9th Cir. 2016) (adopting the reasoning of *Silva v. Metropolitan Life Ins. Co*); *compare Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 480 (2015) (holding alternative pleading allowed when based on an injury separate and distinct from the benefit claim).

Plaintiffs seek similar, but not identical relief, as sought under the First Cause of Action. Not knowing whether Plaintiffs will achieve full relief, or adequate relief under Section 502(a)(1)(B), 29 § 1132(a)(1)(B) they are not precluded from asserting a claim under § 502(a)(3), 29 § 1132(a)(3). Given that Plaintiffs seek broad based injunctive relief requiring BCBSMA to cease its unlawful practices and to re-evaluate denied claims on a class wide basis, relief under this alternative section of ERISA may prove all the more appropriate. And the Supreme Court has made very clear that "surcharge," equitable relief requiring payment of benefits by an ERISA plan, is available under §502(a)(3), 29 U.S.C. §1132(a)(3) where allegations of breach of fiduciary duty are pled. *CIGNA Corp. v. Amara,* 563 U.S. 421, 442 (2011). Brent and Angie have asserted that BCBSMA has breached its fiduciary duty to them and all the proposed class members. First Amended Complaint, Dkt. 41, ¶41. Their Second Cause of Action claiming entitlement to "appropriate equitable relief" should not be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion.

Dated:  November 13, 2018                     RESPECTFULLY SUBMITTED BY THE PLAINTIFFS,

/s/ Sean K. Collins
SEAN K. COLLINS (BBO# 687158)
Law Offices of Sean K. Collins
184 High Street, Suite 503
Boston, MA 02110
Telephone: 617-320-8485
Fax: 617-227-2843
sean@neinsurancelaw.com


*/s/ Jonathan M. Feigenbaum*
JONATHAN M. FEIGENBAUM
(BBO# 546686)
Law Offices of Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110
Telephone: 617-357-9700
Fax: 617-227-2843
jonathan@erisaattorneys.com

/s/ Brian S. King
BRIAN S. KING
Brian S. King, PC
336 South 300 East, #200
Salt Lake City, UT 84111
Telephone: 801-532-1739
Fax: 801-532-1936
brian@briansking.com

Attorneys for Plaintiffs and the Classes

## CERTIFICATE OF SERVICE

    I hereby certify that on November 13, 2018, a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

                                            */s/ Sean K. Collins*

                                            SEAN K. COLLINS