UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENT S., ANGIE S., J.B., R.B., A.F., C.S. and H.S., individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC., and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,<br><br>  Defendants. | CIVIL ACTION<br>NO. 1:17-cv-11569-ADB |

**SECOND AMENDED CLASS ACTION COMPLAINT**

Brent S. ("Brent"), and Angie S. ("Angie") (parents of "Jake"), J.B. and R.B. (parents of "D.B."), A.F. (father of "J.F."), and C.S. and H.S. (parents of "E.S.") (collectively "Plaintiffs"), individually and as representatives of the class of similarly situated individuals, complain and allege[1] against Defendants Blue Cross and Blue Shield of Massachusetts, Inc. ("Blue Cross, Inc.") and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("HMO Blue") (collectively "BCBSMA" or "Defendants") as follows:

**NATURE OF THE CASE**

1.   BCBSMA systematically denies payment of claims for adolescents' residential treatment of mental health disorders when part of those treatment services involves an educational component during the course of treatment, even though the educational component is merely

---

[1] The allegations made in this Second Amended Class Action Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

1

secondary to the residential treatment.[2] These denials are wrongful.

2.     There is no dispute that residential treatment is covered by BCBSMA's health insurance policies and the self-funded plans it administers.

3.     BCBSMA denies adolescents' claims for mental health residential treatment when there is an educational component to the treatment, citing exclusionary language in the policies.

4.     The exclusionary language cited however is vague and ambiguous when applied to the claims of adolescents, and thus must be interpreted in favor of coverage.

5.     In addition, BCBSMA ignores policy language that allows for an exception to this alleged exclusion when the treatment is received by an adolescent. The obvious intent of this adolescent exception to the exclusion is that elementary, middle and high school aged insureds need to continue with their schooling during long-term mental health residential treatment stays.

6.     Residential treatment is commonly provided to adolescents. The average length of stay for adolescents receiving treatment at residential treatment centers is seven to ten months. Many residential treatment facilities, including the ones that provided treatment to Plaintiffs, are designed and licensed specifically to provide treatment to minors in their teens. Generally accepted standards of mental health care require that residential treatment for adolescents include appropriate educational services, and while BCBSMA's own internal claim guidelines accept this requirement as true, in practice BCBSMA ignores this requirement and systematically denies adolescents' claims.

7.      This forces families to either forego the medically necessary care that their child needs or pay large sums out-of-pocket.

8.     BCBSMA is one of the largest health insurers, and self-funded plan administrators, in

---

[2] The term "adolescent" used throughout this Second Amended Class Action Complaint means any insured under the age of 19 years at the time of their treatment in question.

the country. It provides group health insurance coverage and acts as an administrator of health insurance policies and self-funded plans for thousands of insureds.

9.     BCBSMA is required under the Employee Retirement Income Security Act of 1974 ("ERISA") to administer welfare -benefit plans solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits and in accordance with the instruments that govern its health insurance policies and self-funded plans.

10.    This case seeks to correct impermissible denial of services made by BCBSMA for treatment provided to Jake, D.B., J.F., E.S., and all similarly situated adolescents for whom coverage for mental health disorders in a residential treatment setting has been denied based on the alleged educational component exclusion when the educational services are merely secondary to the residential treatment stay.

## PARTIES

11.    Plaintiffs Brent and Angie are individuals residing in Douglas County, Colorado. Brent and Angie are citizens of Colorado.  Brent, Angie and their son Jake are covered by a Blue Cross, Inc. ERISA administered and governed self-funded health plan provided by Brent's private sector employer.

12.    Plaintiffs J.B. and R.B. are individuals residing in, and citizens of, New Hampshire. J.B., R.B. and D.B. are covered by a Blue Cross, Inc. ERISA governed health insurance policy provided by R.B.'s private sector employer. The applicable BCBSMA case number is 99155AKE00.

13.    Plaintiff A.F. is an individual residing in, and a citizen of, Colorado. A.F. and his daughter J.F. are covered by a Blue Cross, Inc. ERISA governed health insurance policy provided by A.F.'s private sector employer. The applicable BCBSMA case number is

99207E5Z00.

14.     Plaintiffs C.S. and H.S. are individuals residing in, and citizens of, Massachusetts. C.S., H.S. and their son E.S. are covered by an HMO Blue ERISA governed health insurance policy provided by C.S.'s private sector employer. The applicable BCBSMA case number is 99134EHB00.

15.     Defendant Blue Cross, Inc. is a Massachusetts corporation organized and existing under General Laws chapter 180 having a usual place of business at 101 Huntington Avenue, Boston, Suffolk County, Massachusetts.

16.     Defendant HMO Blue is a Massachusetts corporation organized and existing under General Laws chapter 180 having a usual place of business at 101 Huntington Avenue, Boston, Suffolk County, Massachusetts.

17.     Defendant HMO Blue, is a wholly owned subsidiary of Defendant Blue Cross, Inc..

18.     Defendant HMO Blue is also "wholly-controlled" by Blue Cross, Inc. as admitted by Defendants in their Internal Revenue Service filings:

> BLUE CROSS BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC. ("HMO BLUE") IS A WHOLLY-CONTROLLED SUBSIDIARY ORGANIZATION OF BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC. ("BCBSMA"). THE BOARD OF DIRECTORS OF HMO BLUE IS LARGELY MADE UP OF OFFICERS OF BCBSMA. HMO BLUE BOARD MEMBERS ARE APPROVED, APPOINTED AND OPERATE UNDER THE DIRECTION BY/OF THE BOARD OF DIRECTORS OF BCBSMA, AN INDEPENDENT GOVERNING BODY.[3]

19.     As the HMO Blue IRS Form 990 reveals, Defendants share the same officers (CEO, CFO, COO, Treasurer, Chief Legal Officer, Vice President, Assistant Treasurer) as well as even the same physician file reviewers.[4]  In addition nearly all of the officers of HMO Blue,

---

[3] See HMO Blue's IRS Form 990 for 2017: https://990s.foundationcenter.org/990_pdf_archive/043/043362283/043362283_201712_990O.pdf at p. 35.
[4] *Id*. at 9-10.

who are also officers of Blue Cross, Inc., take their compensation entirely from Blue Cross, Inc. with no reportable compensation coming from HMO Blue.[5]

20.     As noted by Blue Cross, Inc., in their most recent consolidated financial statements, "HMO Blue and [Blue Cross, Inc.] operate under common Board of Directors management and control."[6]  In fact, HMO Blue has no employees who are not also employed by Blue Cross, Inc., "Employees of the Companies [i.e. collectively Blue Cross, Inc. and HMO Blue] (the "Associates") are either: concurrently employed by the Companies or solely employed by [Blue Cross, Inc.][.]"[7]

21.     While Defendants may have attempted to create a separate financial structure between Blue Cross, Inc. and HMO Blue for taxation and financial reporting purposes, in practice there is no real corporate separation that would allow Blue Cross, Inc. to escape liability for its acts and omission harming plan participants through its direction of the "wholly-controlled" HMO Blue subsidiary.

22.     Accordingly, since the complained of actions of Blue Cross, Inc. are also the actions of HMO Blue, and vice versa, Defendants are collectively referred to as BCBSMA, or Defendants, throughout this Second Amended Class Action Complaint.

## JURISDICTION & VENUE

23.     The BCBSMA health insurance policies, and the self-funded plans it administers, that are the subject of this lawsuit are provided through employer sponsored welfare benefit plans that are governed by ERISA, 29 U.S.C. § 1001, *et. seq.*

24.     At all relevant times, BCBSMA acted as a fiduciary, as that term is defined at 29 U.S.C.

---

[5] *Id*.
[6] Blue Cross and Blue Shield of Massachusetts, Inc. Years Ended December 31, 2018 and 2017 Audited Financial Statements, https://aboutus.bluecrossma.com/sites/g/files/csphws1376/files/PDFs/BCBSMA%20Inc.%20AFS%204.25.19%20-%20with%20Supplementary%20Information.pdf at 56.
[7] *Id* at 57.

§ 1002(21), for the ERISA plans subject to this lawsuit.

25.    This Court has jurisdiction over this matter under 29 U.S.C. §1132(e)(1) and 28 U.S.C.§ 1331.

26.    Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) and (c) because BCBSMA is headquartered in Massachusetts, is a citizen of Massachusetts, and administers ERISA welfare benefit plans in Massachusetts.

## RELEVANT LANGUAGE IN THE BCBSMA ERISA GOVERNED HEALTH INSURANCE POLICIES

27.    For Jake, D.B., J.F., E.S. and each class member, the relevant language in their BCBSMA ERISA governed health insurance plans are either identical or substantially similar.

28.    There is no dispute that the BCBSMA plans cover mental health residential treatment.

29.    BCBSMA alleges that the policies exclude mental health residential treatment services that have an educational component and cite the following language in support:

> Some examples of services and programs that are not covered by this health plan are: services that are performed in educational…settings[.]… These types of non-covered programs may be in residential or nonresidential settings. They may include therapeutic elements and/or clinical staff services as well as vocational, educational, problem solving, and/or recreational activities. These programs may have educational accreditation. The staff may include some licensed mental health providers who may provide some therapy. No benefits are provided for any services furnished along with one of these non-covered programs. For example, no benefits are provided for therapy and/or psychotherapy furnished along with one of these non-covered programs.

30.    The initial dispute here is whether the above cited language is vague and ambiguous as applied to the claims of adolescents, given that adolescents must continue their schooling while seeking long-term residential treatment. The policies fail to define the vague term "educational[] setting" so instead BCBSMA supplies its own wholly restrictive definition in order to limit

exposure to costly long-term residential treatment stays for adolescents with mental health disorders. BCBSMA's interpretation is completely contradicted by its own InterQual Criteria claim handling guidelines which state that "Adolescent Psychiatry Residential Treatment" programs must include a "School/Vocational program[.]"

31. In addition, even if such exclusionary language is not vague and ambiguous as to the claims of adolescents, the second dispute is whether the following provision common to all class policies expressly allows for an exception to the exclusion for the coverage of mental health residential treatment that has an educational component when the mental healthcare treatment is for an adolescent:

> No benefits are provided for exams, evaluations, ***or services that are performed solely for educational*** or developmental ***purposes. The only exceptions are for…treatment of mental conditions for enrolled dependents who are under age 19***[.] (emphasis added).

32. Again, Defendants purport to rely on the InterQual Criteria for its claim handling of mental health claims. The InterQual Criteria adopted by BCBSMA for "Adolescent Psychiatry Residential Treatment" claims expressly state that covered programs must "at a minimum" include a "School/Vocational program" which is entirely consistent with Plaintiffs' interpretation of the alleged educational setting exclusion and the adolescent exception to the exclusion. Moreover, Defendants corresponding InterQual Criteria adopted for adult residential treatment claims does not include the school program minimum requirement, for obvious reasons – adolescents in need of residential treatment cannot afford to fall behind in schooling while receiving treatment, unlike adults. The InterQual Criteria recognizes this, and Defendants should too.

## FACTUAL ALLEGATIONS

33. BCBSMA is one of the largest health insurers in the country, providing coverage and administering health insurance, and self-funded, plans for millions of employees and their

dependents.

34.     The claims for coverage of adolescent mental health residential treatment in this lawsuit are under BCBSMA ERISA governed health insurance policies and self-funded plans.

35.     BCBSMA argues that the language of the policy quoted above excludes coverage for mental health residential treatment that has an educational component.

36.     This is despite the fact that BCBSMA adopts the InterQual Criteria as part of its claim handling standards, and the InterQual Criteria notes that "at a minimum" any "Adolescent Psychiatry Residential Treatment" facility should include a "School/Vocational program[.]"

37.     BCBSMA's interpretation of the policies as wholly excluding coverage for adolescents' stays at residential mental healthcare treatment facilities with an educational program is thus contradicted by its own claim handling guidelines – the InterQual Criteria.

38.     BCBSMA makes no attempt to evaluate, on an individual patient basis, the merits of a claim for residential mental healthcare treatment that has an educational component, even for adolescents' claims, and instead denies the claim without following the governing ERISA plan instruments, the ERISA statute and Secretary of Labor guidelines. This was the experience of Jake, D.B., J.F., E.S., and all similarly situated class members.

39.     Jake, received treatment for his mental health disorders at Ashcreek Ranch Academy ("ARA"), a licensed residential treatment program in Washington County, Utah from March 13, 2014 through January 24, 2015. During this 10 month time period, Jake was 17 years old.

40.     Jake struggled with mental health problems involving suicidal thoughts, self-esteem, and substance abuse for several years before being admitted to ARA.

41.     Jake began smoking marijuana when he was thirteen. In the months before his admission to ARA, Jake had progressed to using various pills, cocaine, and heroin. He was depressed and ashamed about his behavior and the problems he was causing friends and family. He was

prescribed with an anti-depressant and, later, a mood stabilizer.

42. Before his admission to ARA, Jake had been involved in a number of physical assaults with others, including with Brent. He had also been brought into the juvenile justice system based on substance abuse and his assaults.

43. Jake ran away from home during this time frame. After three days he contacted his mother and told her he was OK and came home a day later.

44. Several months before being admitted to ARA Jake had been ordered by a juvenile court judge to receive mental health treatment for his substance abuse. He did well in rehabilitation for four months but then, immediately before his admission to ARA, relapsed and began using drugs again. Given the continuing deterioration, Brent and Angie, in consultation with and recommendations from Jake's health providers, arranged for treatment at ARA.

45. Immediately before Jake's admission to ARA, he had been treated on an acute inpatient basis at Mountain Crest Behavioral Health Center ("MCBHC") in Fort Collins.

46. At the time of his discharge from MCBHC, Brent and Angie had no ability to keep Jake from running away and either committing suicide or self-harming unless he was transferred directly to a sub-acute inpatient residential treatment setting. Health care professionals involved with Jake's treatment at MCBHC recommended residential treatment for Jake to treat his mental health disorders. Brent drove Jake directly to ARA from MCBHC in March, 2014.

47. Jake was 17 years old at the time of his admission to ARA.

48. ARA was licensed with the Utah State Department of Human Services to provide residential treatment for adolescents during the entire time Jake was treated at ARA. Copies of ARA's licenses during the time Jake was treated were provided to BCBSMA by both Brent and Angie and ARA during the pre-litigation appeal process for this case. ARA's licensure and the services it provided to its patients fall within the coverage provisions of Jake's health insurance policy, specifically, the adolescent exception to the alleged educational component exclusion.

49. Authorization was requested from BCBSMA for coverage of Jake's treatment at ARA. In addition, claims were submitted to BCBSMA for coverage of Jake's treatment at ARA.

50. On February 25, 2015, BCBSMA denied Jake's claim for coverage of his treatment ARA.

51. Brent appealed the denial of coverage on April 15, 2015.

52. BCBSMA again denied Jake's claim on May 14, 2015. In this denial, BCBSMA asserted that the sole basis for the claim denial was because "Ashcreek Ranch Academy is a residential treatment [sic] and boarding school. Ashcreek Ranch Academy is not a covered type of provider on your . . . Plan." BCBSMA then quoted the vague and ambiguous policy language referencing the alleged coverage limitation for mental health services performed with an educational component and concluded "[w]e are not questioning the medical necessity of the service or making a medical judgment."

53. Similar to Jake, 17-year-old D.B. struggled with mental health disorders such as depression, attention deficit-hyperactivity disorder, and oppositional defiant disorder.

54. On advice of her treatment providers, D.B. moved inpatient to Ironwood Maine ("Ironwood"), a State of Maine licensed "Children's Residential Care Facility." D.B. resided at Ironwood from August 1, 2017 to August 6, 2018.

55. BCBSMA denied D.B.'s initial claim for Ironwood on August 3, 2017, noting "[b]ased on the information publically available to us about this facility and program, including the web address HTTP://WWW.IRONWOODMAINE.COM/STAFF.HTML, and information provided with this request the services requested are being rendered as part of (sic) Educational Facility and Program."

56. BCBSMA maintained its denial on appeal, explaining in a January 25, 2018 letter that, "although D.B. may have resided in or at a residential therapeutic school, these services are not the type of residential programs which are covered by your plan. Please also be aware that, while

denying this claim since the services do not constitute a covered benefit, we are not making a medical necessity judgment about the type of care that D.B. qualified for at the time that she entered Ironwood Maine LLC."

57. D.B.'s stay at Ironwood should have been covered by her BCBSMA policy as a qualifying adolescent residential treatment stay for a mental health disorder, but instead it was summarily denied without regard for medical necessity, the policy language, or the InterQual Criteria which BCBSMA represents it follows.

58. Just like Jake and D.B., 13-year-old J.F. suffered from mental health disorders including a major depressive disorder and an anxiety disorder.

59. On advice of her mental healthcare treatment providers, J.F. moved inpatient to Moonridge Academy ("Moonridge"), a State of Utah licensed "RESIDENTIAL TREATMENT" facility "FOR 16 YOUTH FEMALE CLIENTS AGES 12 TO 17[.]" J.F. resided at Moonridge from January 15, 2018 to November 29, 2018.

60. BCBSMA denied J.F.'s initial claim for Moonridge on January 16, 2018, noting in verbatim fashion to D.B.'s initial denial, "[b]ased on the information publically available to us about this facility and program, including the web address http://www.moonridgeacademy.com/ADVENTURE-THERAPY, and information provided with this request the services requested are being rendered as part of (sic) Educational Facility and Program."

61. J.F. appealed and on July 20, 2018 BCBSMA rendered a final adverse-benefit determination stating the identical language found in D.B.'s adverse-benefit determination letter stating, "although J.F., may have resided in or at an educational program, these services are not the type of residential programs which are covered by your plan. Please also be aware that, while denying these claims since the services do not constitute a covered benefit, we are not making a

medical necessity judgment about the type of care that J.F., qualified for at the time that she entered Moonridge Academy."

62. J.F.'s stay at Moonridge should have been covered by her BCBSMA policy as a qualifying adolescent residential treatment stay for a mental health disorder, but instead it was summarily denied without regard for medical necessity, the policy language, or the InterQual Criteria supposedly followed by BCBSMA.

63. Just like Jake, D.B., and J.F., 14-year-old E.S. suffered from mental health disorders including attention-deficit/hyperactivity disorder.

64. On advice of his treatment providers, E.S. moved inpatient to Maple Lake Academy for Boys ("Maple Lake"), a State of Utah licensed "RESIDENTIAL TREATMENT" facility "FOR 16 YOUTH MALE CLIENTS AGES 12 TO 17[.]" E.S. resided at Maple Lake from June 1, 2017 to January 22, 2019.

65. BCBSMA denied E.S.'s initial claim for residential mental health care treatment at Maple Lake on June 6, 2017, noting in verbatim fashion to D.B. and J.F.'s initial denial, "[b]ased on the information publically available to us about this facility and program, including the web address http://www.maplelakeacademy.com/, and information provided with this request the services requested are being rendered as part of (sic) Educational Facility and Program."

66. E.S. appealed and on September 26, 2017 BCBSMA rendered an adverse-benefit determination using near verbatim language as J.F. and D.B.'s appeal denials quoted above, "although you, may have resided in or at an educational setting, these services are not the type of residential programs which are covered by your plan. Please also be aware that, while denying this claim since the services do not constitute a covered benefit, we are not making a medical necessity judgment about the type of care that you qualified for at the time that you entered Maple Lake Academy for Boys."

67.     E.S. appealed again, and on December 19, 2017, BCBSMA issued its final adverse benefit determination stating "[w]e believe that our denial rationale is valid and that services received in an educational setting are in fact excluded from coverage under your plan[.]"

68.     E.S.'s stay at Maple Lake should have been covered by his HMO Blue policy as a qualifying adolescent residential treatment stay for a mental health disorder, but instead it was summarily denied without regard for medical necessity, the policy language, or the InterQual Criteria supposedly followed by BCBSMA.

69.     Plaintiffs have exhausted their ERISA pre-litigation appeal obligations under the ERISA plan instruments before filing this action. Plaintiffs have paid substantial sums of money for residential mental healthcare treatment for Jake, D.B., J.F. and E.S.'s treatment and BCBSMA has paid nothing.

## CLASS ALLEGATIONS

70.     BCBSMA's systematic practice of denying coverage for adolescents' mental health residential treatment with an educational component violates the terms of the ERISA governed health insurance policies and self-funded plans it administers as well as the InterQual criteria for "Adolescent Psychiatry Residential Treatment" which BCBSMA represents it relies on.

71.     As a result of these actions, BCBSMA systematically and unlawfully denies coverage for mental healthcare treatment in residential treatment facilities for adolescents covered under BCBSMA ERISA governed health insurance policies and self-funded plans it administers.

72.     BCBSMA's systematic actions in violation of ERISA and the terms of the health insurance policies and self-funded plans, as outlined above, are breaches of its fiduciary duties to the participants and their beneficiaries under 29 U.S.C. §§ 1104(a)(1)(A) and (a)(1)(D).

73.     In addition to Jake, D.B., J.F., and E.S., on information and belief, more than 100 insured adolescents under BCBSMA ERISA health insurance policies and self-funded plans it administers have had mental health residential treatment claims improperly denied based on

BCBSMA's application of the vague and ambiguous educational component exclusion and/or BCBSMA's failure to apply the adolescent exception to the alleged educational component exclusion. Thousands more adolescents are generally insured under BCBSMA ERISA governed health insurance policies and self-funded plans and, absent Court intervention, will face BCBSMA's improper actions if they seek coverage for a residential mental healthcare treatment stay that includes an educational component.

74. Plaintiffs seek certification of the following two classes under F.R.C.P 23(b)(1) and (b)(2):

> **Class I:** All current BCBSMA ERISA governed health insurance beneficiaries under the age of 19 covered by a health insurance policy or self-funded plan that contains this same or similar language, "No benefits are provided for exams, evaluations, or services that are performed solely for educational or developmental purposes. The only exceptions are for: …treatment of mental conditions for enrolled dependents who are under age 19[.]"
>
> **Class II:** All former or current BCBSMA ERISA governed health insurance beneficiaries who are, or were, covered by a health insurance policy or self-funded plan that contains this same or similar language, "No benefits are provided for exams, evaluations, or services that are performed solely for educational or developmental purposes. The only exceptions are for: …treatment of mental conditions for enrolled dependents who are under age 19[,]" and who had a claim for mental health residential treatment, while under the age of 19, denied on the basis that the treatment had an educational component and/or was performed in an educational setting.

75. Class I seeks declaratory relief and an injunction preventing BCBSMA from engaging in the complained of conduct from the date of the injunction.

76. Class II seeks declaratory relief and an injunction requiring BCBSMA to reprocess class members' claims in accordance with the terms of their health insurance policies or self-funded plans, by interpreting the vague and ambiguous educational component exclusion in favor of coverage and/or allowing for an exception to the alleged educational component exclusion when the insured is under the age of 19.

77. The proposed class action is appropriate for certification under F.R.C.P. 23(a)(1), because

the tens of thousands of adolescents who are covered by BCBSMA ERISA governed health insurance policies and self-funded plans, and the estimated hundred or more who have faced improper denials as alleged herein, is so numerous that joinder of each of the individuals as a plaintiff is impractical.

78. The proposed class action is appropriate for certification under F.R.C.P. 23(a)(2), because there are questions of law or fact that are common to the class, namely, whether BCBSMA's denial of mental health residential treatment claims of adolescents based on the alleged educational component exclusion is correct given the policies' vague and ambiguous language as well as the exception for care provided to insureds under 19, as discussed in detail above.

79. Certification of a class action is proper under F.R.C.P. 23(a)(3) because the claims of the Plaintiffs are typical of the members of the proposed class in that the basis for Jake's denial for treatment at ARA was based on the alleged educational component exclusion, as were the denials faced by D.B., J.F. and E.S..

80. The prerequisite for class action certification identified at F.R.C.P. 23(a)(4) is met in this case, because the named representatives of the proposed class will fairly and adequately protect the interest of the proposed class and Plaintiffs' counsel has adequate experience and background in both health insurance litigation and consumer class action litigation to represent the proposed class.

81. Certification of a class action under F.R.C.P. 23(b)(1) is proper, because prosecution of separate actions by all the individual members of the proposed class would create a risk of inconsistent and varying adjudication with respect to the individuals that would result in incompatible standards of conduct for BCBSMA. For example, if one reviewing court were to decide that BCBSMA's use of the alleged educational component exclusion is improper when denying adolescents' mental health residential treatment claims, and a different reviewing court were to decide the opposite, BCBSMA would be facing wholly incompatible standards of

conduct when trying to decide an adolescent's mental health residential treatment claim with an educational component.

82. Similarly, certification of a class action under F.R.C.P. 23(b)(1) is also proper, because if this Court were to only issue a decision on the legal issues raised in Jake, D.B., J.F. and E.S.'s claims on an individual basis, it would be dispositive of the interests of the other members not parties to the individual adjudication or would substantially impair or impede their ability to protect their interests since legal precedent would be created on the interpretation of policy language common to all class members.

83. Certification of a class action under F.R.C. P. 23(b)(2) is also appropriate, because BCBSMA's uniform practice of misapplying the alleged educational component exclusion to mental health residential treatment claims of adolescents applies generally to the class making final injunctive or declaratory relief appropriate respecting the class as a whole. This is supported by the near identical claim experiences of the Plaintiffs as detailed above.

## FIRST CAUSE OF ACTION

### (Claim for Benefits under 29 U.S.C. §1132(a)(1)(B))

84. BCBSMA's actions in denying coverage for adolescents' mental health care at residential treatment centers that have an educational component violates the express terms of the ERISA governed insurance policies and self-funded plans.

85. BCBSMA's actions have harmed Plaintiffs and the classes because BCBSMA has systematically denied coverage for adolescents' mental health care in residential treatment settings that should be covered under the required terms of the ERISA governed health insurance policies and self-funded plans subject to this case.

86. As a result of BCBSMA's failure to provide coverage for adolescents' mental health treatment as required by the terms of the relevant ERISA governed health insurance policies and self-funded plans, BCBSMA has unlawfully denied coverage for Plaintiffs and the classes'

adolescent mental health treatment received in a residential setting with an educational component.

87.     The Plaintiffs and the classes are entitled to declaratory judgment and an injunction requiring that BCBSMA administer their ERISA governed health insurance policies and self-funded plans in compliance with ERISA and the terms of the contracts.

## SECOND CAUSE OF ACTION

### (Claim for Appropriate Equitable Relief under 29 U.S.C. §1132(a)(3))

88.     Plaintiffs and the classes are entitled to declaratory judgment and an injunction.

89.     Plaintiffs and the class members seek this Court's order that they are entitled to appropriate equitable relief under 29 U.S.C. §1132(a)(3), including injunctive relief prohibiting past and future violations of ERISA relating to ERISA instruments; reformation of ERISA instruments drafted by BCBSMA to the degree plan/policy language violates ERISA; for the equitable relief of surcharge requiring reprocessing improperly denied residential treatment claims as described above.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of the putative Class I and Class II pray for judgment against BCBSMA as follows:

1.     For an Order certifying the proposed classes under F.R.C P. 23(b)(1) and (b)(2);

2.     For the relief outlined in the First and Second Causes of Action outlined above;

3.     Declaratory relief and an injunction prohibiting BCBSMA from applying the alleged educational component exclusion to adolescents' claims for mental health residential treatment;

4.     Declaratory relief and an injunction directing BCBSMA to reprocess all Class II members' mental health residential treatment claims that were denied on the alleged educational component exclusion basis;

5. An award of costs and attorneys' fees available under law or statute including 29 U.S.C. §1132(g).

6. For such further relief as the Court deems equitable in the case.

| | |
|---|---|
| Dated: December 9, 2019 | THE PLAINTIFFS, BY THEIR ATTORNEYS, |
| | */s/ Sean K. Collins* |
| | Sean K. Collins<br>B.B.O. # 687158<br>Law Offices of Sean K. Collins<br>184 High Street, Suite 503<br>Boston, MA 02110<br>Telephone: 855-693-9256<br>Fax: 617-227-2843<br>sean@neinsurancelaw.com |
| | Jonathan M. Feigenbaum<br>B.B.O. #546686<br>Law Offices of<br>Jonathan M. Feigenbaum<br>184 High Street, Suite 503<br>Boston, MA 02110<br>Telephone: 617-357-9700<br>Fax: 617-227-2843<br>jonathan@erisaattorneys.com |
| | Brian S. King (PHV)<br>Brian S. King,<br>Attorney at Law<br>336 South 300 East, Suite 200<br>Salt Lake City, UT 84111<br>Telephone: 801-532-1739<br>Fax: 801-532-1936<br>brian@briansking.com |
| | Ex Kano S. Sams II<br>(PHV to be submitted)<br>Glancy Prongay & Murray LLP<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: 310-201-9150 |

Fax: 310-201-9160
esams@glancylaw.com

*Attorneys for Plaintiffs and the Classes*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the date below my signature, a copy of the foregoing was electronically filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system. Parties not registered with the Court's electronic filing system will be served this same day by First Class U.S. Mail.

                                    */s/*Sean K. Collins
                                    Dated: December 9, 2019