**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BRENT S., ANGIE S., J.B., R.B., A.F., C.S., H.S., STEVE C., KELLY W., JANE DOE, and M.L., individually and as representatives of the class of similarly situated individuals,

Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC., and BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.

Defendants.

D. MASS. CIVIL ACTION NO. 1:17-cv-11569-ADB

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND REQUEST FOR PLAINTIFF SERVICE AWARDS**

## INTRODUCTION

Class Counsel, (i) Sean K. Collins of the Law Offices of Sean K. Collins, (ii) Mala M. Rafik of Rosenfeld & Rafik, P.C.; (iii) Jonathan M. Feigenbaum of the Law Offices of Jonathan M. Feigenbaum; (iv) Brian S. King of Brian S. King, Attorney at Law; and (v) Ex Kano S. Sams II of Glancy Prongay & Murray LLP ("Class Counsel"), respectfully submit this memorandum of law in support of their application, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, for (i) an award of attorneys' fees in the amount of $3,505,966.69; (ii) an award of $$94,033.31 for litigation expenses incurred in prosecuting this action; and (iii) payment of $100,000.00 in total to be split between Lead Plaintiffs Brent S., Angie S., J. B., R. B., A. F., C. S., H. S., Steve C., Kelly W., Jane Doe, and M. L., (collectively, "Plaintiffs").[1]

Defendants Blue Cross and Blue Shield of Massachusetts, Inc., and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("Defendants" or "BCBSMA") have reviewed this memorandum and do not contest this application.

## PRELIMINARY STATEMENT

After five-and-a-half years of litigation across two related actions, the parties reached an agreement that: (1) allows 239 families to seek monetary payment in amounts up to $88,875 per family (the "Class"); and (2) requires changes that will allow for transparency when BCBSMA declines coverage at a residential program as a non-covered provider (the "Settlement"). As part of the Settlement, BCBSMA agreed to pay attorneys' fees and litigation costs separate and apart from the amounts that Settlement Payment Class Members[2] may recover under the Settlement, provided that the fees and litigation costs awarded by the Court do not exceed $3,600,000 in total. BCBSMA also agreed to pay separately all Settlement administration costs and lead plaintiff service awards.

[1] Plaintiff M.L. will not receive a portion of this amount as her involvement did not begin until very late in the litigation. The remaining five families will receive $20,000 per family.
[2] Capitalized terms used in this Memorandum refer to defined terms in the Settlement.

This substantial and certain recovery obtained for the Class was achieved through the efforts, skill, experience, and effective advocacy of Class Counsel since 2017 when this matter was filed. Efforts of counsel included conducting a comprehensive investigation of the events underlying the claims alleged in both the *Brent S.* and *Steve C.*[3] litigations, including, inter alia:

- Researching the applicable law with respect to Lead Plaintiffs' claims and Defendants' anticipated defenses;
- Drafting multiple complaints for alleged violations of ERISA;
- Opposing Defendants' multiple motions to dismiss;
- Submitting public record requests and reviewing responses;
- Reviewing publicly available information regarding Defendants;
- Requesting, negotiating for, and reviewing tens of thousands of pages of non-public documents;
- Responding to Defendants' discovery requests;
- Litigating motions to compel discovery;
- Deposing nine employees/former employees of Defendants;
- Defending seven Plaintiff depositions taken by Defendants;
- Filing a motion for class certification;
- Consulting with industry experts;
- Preparing detailed mediation statements and participating in a formal arm's-length mediation process before two separate highly experienced mediators;
- Negotiating and documenting the Settlement; and
- Assisting Class members with the Settlement Payment Class claim process.

Collins Decl. ¶26.

[3] *Steve C. et. al. v. Blue Cross and Blue Shield of Massachusetts, Inc. et. al.* (1:18-cv-12278-ADB).

Class Counsel's efforts to date have been without compensation of any kind for their prosecution of this case, which required them to devote over 4,166.72 hours of billable time, and risk $94,033.31 in litigation expenses. Collins Decl. ¶8; Rafik Decl. ¶¶66-73; Feigenbaum Decl. ¶¶67, 68; King Decl. ¶¶23, 25; Sams Decl. ¶¶7, 9. The recovery of any fees or expenses has been wholly contingent upon the result achieved. Thus, in accordance with fees awarded in similar actions in this Circuit and throughout the country, Class Counsel seeks $3,505,966.69 in fees and $94,033.31 in expenses. These amounts would equate to a percentage fee of less than 33.33% of the money potentially available to the Settlement Payment Class, if every Settlement Payment Class member submits a claim for the full amount of recovery available, as discussed in detail below. The fee requested also passes a lodestar crosscheck for reasonableness, carrying a lodestar multiplier of 1.36. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 308 (1st Cir. 1995) ("Given the peculiarities of common fund cases and the fact that each method, in its own way, offers particular advantages, we believe the approach of choice is to accord the district court discretion to use whichever method, POF or lodestar, best fits the individual case. We so hold, recognizing that the discretion we have described may, at times, involve using a combination of both methods when appropriate."). Under either method, the fee requested by Plaintiffs, which is to be paid separate and apart from the recovery that goes to the Settlement Payment Class, is reasonable.

## ARGUMENT

### I. Class Counsel Is Entitled to an Award of Reasonable Attorneys' Fees

F.R.C.P. Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

This matter was brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), which provides an independent avenue for fees through under 29 U.S.C. §1132 (g)(1). Plaintiffs satisfy the criteria for such an award as they have "achieved 'some degree of success on the

merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149 (2010). "The statutory standard is satisfied as long as the merits outcome produces some meaningful benefit for the fee-seeker." *Gastronomical Workers Union Local 610 v. Dorado Beach*, 617 F.3d 54, 66 (1st Cir. 2010) (citing *Hardt*, 130 S.Ct. at 2157). In this case, the parties agreed that the Attorneys' Fees and litigation expenses would be reimbursed separately from amounts due to Settlement Payment Class members. A provision whereby attorneys' fees will be paid separately, subject to approval of Plaintiffs' forthcoming motion for attorneys' fees and costs further evidences fairness because class counsel's remuneration was not considered until after reaching agreement on the Settlement Payment amounts for the Settlement Payment Class. Settlement at p. 41. ("The Parties represent that their negotiation of an agreement to the foregoing attorneys' fees and costs did not occur until after the substantive terms of the Agreement had been negotiated and agreed to."); Collins Decl. at ¶¶18, 23; *see also Bussie v. Allamerica Fin. Corp.*, No. CIV.A. 97-40204-NMG, 1999 WL 342042, at *3 (D. Mass. May 19, 1999) (approving such separately paid fees). Separating attorneys' fees from the amount paid to the class "is preferable" because it "avoids potential conflicts with the class." *Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). Unlike a situation where the attorneys are paid from the common fund, where the fee is "independent of the benefit obtained for the class" and is paid by defendant, the interests of counsel and the class do not diverge as the attorneys' fees do not reduce the amount to the class. *Rossi v. Proctor & Gamble Co.*, No. CIV.A. 11-7238 JLL, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013) (approving payment of attorneys' fees that were separate from the settlement funds and noting "…there is no potential conflict of interest between attorneys and class members.").

## II. The Attorneys' Fees Requested Are Reasonable Under Both a Percentage-of-the Fund Calculation and Using a Lodestar Cross-Check

The Supreme Court has endorsed the percentage method, stating that "under the common fund doctrine... a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The First Circuit also endorses this method in common fund

cases, noting that it is the prevailing method and that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 308 (1st Cir. 1995). Indeed, the percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] ... is 'less burdensome to administer than the lodestar method,' ... 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases."' *Duhaime v. John Hancock Mut. Life Ins*. Co., 989 F. Supp. 375, 377 (D. Mass. 1997) (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting method "directly aligns the interests of the class and its counsel").

While here a common fund was not technically created, the potential recovery of up to $8,680,125[4] available[5] to the Settlement Payment Class (if every member submits a claim for the full amount of payment available) along with the attorneys' fees and litigation expenses (up to $3,600,000, subject to Court approval), and the lead Plaintiff service awards requested in this application (totaling up to $100,000, subject to Court approval), yields a total of $12,380,125. *See* Settlement at pp. 30, 41-43; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 479, 100 S. Ct. 745, 749–50, 62 L. Ed. 2d 676 (1980) ("Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their

[4] There are 54 class members in Subclass 1 ($3,199,500 max claim dollars available based on the $59,250 cap if every member submits a claim for payment) and 185 class members that BCBSMA has identified as falling into Subclasses 2-5 ($5,480,625 max claim dollars available based on the $29,625 cap if every member submits a claim for payment).

[5] While $8,680,125 is available, as part of the claim process Settlement Payment Class Members need to demonstrate that their daily facility cost exceeded $300/day and their stay lasted at least nine months for the full Subclass 1 amount of $59,250 and full Subclasses 2-5 amount of $29,625 to be payable. Given that residential program daily costs most often exceed $300/day, Class Counsel expects that most claimants would hit the maximums or close to them. Indeed, all six lead plaintiff families hit the $59,250 (5 families) or $29,625 (1 family) maximums. Regardless, Class Counsel's discussion below also contemplates a theoretical 20% reduction in the overall valuation which still demonstrates the requested fee is reasonable.

individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.").[6]

This figure of $8,680,125 potentially available to the Settlement Payment Class, if every single Settlement Payment Class member submits a claim for payment under the Settlement, does not take into account: (1) where two stays were separated by 90 days, Settlement Payment Class members' can file for a second claim (subject to a 50% second claim discount), and thus a total two claim cap of $88,875 for Subclass 1 and $44,437.50 for Subclasses 2-5; (2) that Settlement Payment Class members may challenge BCBSMA's assignment of Subclasses 2-5 in favor of the more valuable Subclass 1 assignment through the Special Master process; and (3) the valuable, but hard to quantify, injunctive relief that the litigation achieved for BCBSMA members at large when seeking coverage at residential programs in the future. However, it also does not take into account that some Settlement Payment Class members will have their Settlement Payments reduced by amounts that Defendants previously covered and paid for outpatient services associated with these stays. Even if the value of the amount available for payments to Settlement Payment Class members were reduced by 20% from $8,680,125 to $6,944,100, Class Counsel's requested fee of $3,505,966.69 would still be less than 33.33% of the total.[7]

The total lodestar expended by Class Counsel is $2,573,238. Collins Decl. ¶8, Rafik Decl. ¶¶66-

---

[6] Unless otherwise indicated, all emphasis is added and all citations and internal quotations are omitted.

[7] $6,944,100 + $3,600,000+$100,000= $10,644,100 (33.33% of this is $3,547,678.53, slightly more than requested). This is conservative and does not include taking into account all costs associated with the Settlement Administrator, the Website, the Special Master, and disseminating the Summary Settlement Notice.

73, Feigenbaum Decl. ¶67, King Decl. ¶23, Sams Decl. ¶7. A lodestar crosscheck on the fee amount requested carries a lodestar multiplier of 1.36 and multipliers of 2 and more have been found reasonable.[8] *See In re Relafen Antitrust Litig*., 231 F.R.D. 52, 82 (D. Mass. 2005) (finding a "multiplier of 2.02" to be "appropriate" based on comparison of cases); *see also Long v. HSBC USA Inc*., No. 14 CIV. 6233, 2016 WL 4764939, at *12 (S.D.N.Y. Sept. 13, 2016) ("a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases") (quoting *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014)). This factor does not take into account the additional hours of attorney time expected to assist Settlement Payment Class members with subclass challenges to the Special Master, which could be hundreds of hours based on the experience of Class Counsel when working on similar Settlement structures. Collins Decl. ¶11.

In *Roberts v. TJX Companies, Inc*. this Court approved 33.33% of a reversionary common fund fee award with a lodestar multiplier crosscheck of 1.96. *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) ("Accordingly, the Court finds Class Counsel's requested fee of 33 and 1/3% of the fund total, reflecting a lodestar multiplier of nearly 2, to be reasonable in light of the counsel's efforts…and the significant risk they assumed in taking the case on a wholly contingent basis, to be reasonable."). In doing so the Court raised certain issues that gave it hesitation based on the 39% class claim rate and the "clear sailing" provision contained in the settlement. *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) ("As a result of the low claim rate, Class Counsel stands to collect 33 and 1/3% of a $4,750,000 common fund, whereas only 26% of the fund will end up in class members' pockets, and 39% of the fund will revert to Defendants. Arguably, the fee award in this case is closer to a 50/50 split between Class Counsel and the class members, rather than the one-third requested by counsel.")

Unlike *Roberts,* here: (1) the fee and litigation expense award in this Settlement is paid wholly

[8] Total Lodestar of $2,573,238 compared to $3,505,966.69 in fees is 1.36 multiplier.

separate and apart from the Settlement Payment Class amounts not out of a shared common fund – a higher or lower fee award will have no impact on what the Settlement Payment Class members are eligible to receive, only what BCBSMA has to pay; and (2) this Settlement does not contain a "clear sailing" provision where Defendants agree they cannot object to the fee request as part of the Settlement, which gave this Court concern. *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *10 (D. Mass. Sept. 30, 2016) ("In fact, the parties' Settlement Agreement contains a "clear sailing" provision, under which Defendants specifically agree not to oppose Class Counsel's fee application, as long as it does not exceed 1/3 of the Maximum Gross Settlement Amount… Therefore, given the clear sailing clause in this case, the Court must apply heightened scrutiny when determining whether Class Counsel's requested fees are reasonable.") (citing *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991) and *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015)). Here, as part of the Settlement, BCBSMA agreed to pay reasonable attorneys' fees and litigation expenses up to a Court approved cap of $3,600,000. It did not stipulate to a "clear sailing" non-opposition of the fee and expense request like the parties in *Roberts*. Settlement at 41 ("BCBSMA agrees to pay to Class Counsel, subject to approval by the Court, reasonable attorneys' fees, including reimbursement of expenses through the entry of the Final Order and Judgment, a cumulative total of $3,600,000.00 in fees and costs. The Parties and Class Counsel agree that in no event shall Defendants pay more than $3,600,000.00 for attorneys' fees and costs.").

Based on the above, a requested fee of less than 33-1/3% of a conservative potential total amount available to the Settlement Payment Class if each member submits a claim, and representing a lodestar crosscheck of less than 1.4, is both reasonable under the circumstances and well within the typical range of percentage fees awarded in the First Circuit and elsewhere. *Crandall v. PTC Inc.*, 2017 U.S. Dist. LEXIS 217581, at *16 (D. Mass. July 14, 2017) (awarding 33-1/3%); *Roberts v. TJX Cos., Inc.*, 2016 U.S. Dist. LEXIS 136987, at *45 (D. Mass. Sept. 30, 2016) (awarding 33-1/3%); *see also*

*Plymouth County Ret. Sys. v. Patterson Cos., Inc.*, No. 0:18-cv-00871-MJD-HB, Order Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15. U.S.C. § 78u-4(a)(4) (D. Minn. June 10, 2022) (ECF 267) (awarding 33-1/3% fee on $63 million settlement, plus expenses); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharm., Inc.*, 2020 WL 3053468 (M.D. Tenn. May 29, 2020) (awarded one-third of $120 million recovery, plus expenses); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) (awarding one-third fee on $75 million settlement).

## III. Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable

While "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable," *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 79 (D. Mass. 2005), courts in this Circuit consider several factors when considering an award of attorneys' fees, including: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any." *Hill*, 2015 WL 127728, at *17 (*quoting In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *Medoff v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 19135, at *26-*27 (D.R.I. Feb. 17, 2016) (same). Courts have also considered whether lead plaintiffs support the requested fee and the reaction of the class. *See Hill*, 2015 WL 127728, at *19-*20; *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 401 (D. Mass. 2008) (considering "the reaction of the class members to the settlement and proposed attorneys' fees" as one of the relevant factors). As set forth below, all of these factors weigh strongly in favor of finding that the requested fee award is reasonable.

### A. The Amount of the Recovery and the Number of Class Members Who Will Benefit From the Settlement Support the Requested Fee

Courts consistently have recognized that the result achieved is one of the most important factors to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *see also Puerto Rican Cabotage*, 815 F. Supp. 2d at 458 ("[T]he net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award."). The results Class Counsel achieved for the Class, while avoiding the necessity and risk of prolonged litigation, are compelling, and include the following:

- 239 Settlement Payment Class member families are eligible to submit a claim for a payment capped at $59,250 ($88,875 if two maximum value claims are filed with stays that are 90 days apart) for Subclass 1, or $29,625 ($44,437.5 if two maximum value claims are filed with stays that are 90 days apart) for Subclasses 2-5; and
- Separate from any Settlement Payments, Defendants agreed to pay: (i) reasonable attorneys' fees; (ii) litigation related costs; (iii) lead Plaintiff contribution awards; and (iv) costs associated with the Settlement Administrator, Website, Special Master, and Notice.

Moreover, in addition to the significant monetary component of this Settlement, the agreement provides for important injunctive relief that is difficult to value but contributes to the result achieved. If a request for authorization of services at a residential program is denied, BCBSMA will provide (for at least a period of two years) the specific facts and factors that BCBSMA assessed when deciding that a policyholder's chosen residential program is not a covered provider or service per the terms of the health insurance plan or policy. Plaintiffs believe this information will give families the necessary tools to pursue a meaningful appeal if they disagree with BCBSMA's decision. Collins Decl. at ¶14; Rafik Decl. at ¶44. Plaintiffs also believe it will allow the residential programs insight into BCBSMA's

coverage requirements, which would allow the programs to assist individuals with filing reimbursable claims, and that may result in increased access to care through program changes. *Id*. Class Counsel also anticipates that the injunctive relief will help families obtain insurance coverage for programs when they cannot afford to pay out-of-pocket for their care. The value of the injunctive relief cannot be underscored. *Id*. It is the Plaintiffs' position that, not only is it in line with ERISA's clear notice requirements allowing for a full and fair review of claims (29 U.S.C. § 1133), but that providing a detailed standard will also increase access to much needed mental health care for Massachusetts residents at a time when this state is seeing increased demand. *Id*.

With the exception of two ERISA employee welfare benefit cases adjudicated under the abuse of discretion standard, *Glista v. Unum Life Ins. Co.,* 378 F.3d 113 (1st Cir. 2004) and *Young v. Aetna Life Insurance Co*., 146 F.Supp.3d 313 (D.Mass. 2015), and one adjudicated under the *de novo* standard of review, *Solari v. Partners Healthcare System, Inc*. 2021 WL 1092547 (D.Mass., March 22, 2021), every ERISA benefits case in recent years where the plaintiff has prevailed has resulted in a remand. In *Host v. Unum Life Ins. Co. of Am*., 569 F.Supp.3d 48 (D. Mass. 2021), it took eleven years and one remand before benefits were awarded to Mr. Host. *Colby v. Union Security Insurance Company & Management Company For Merrimack Anesthesia Associates Long Term Disability Plan*, 705 F.3d 58, 68 (1st Cir. 2013), which the First Circuit referred to as "long-festering," took six years to reach an award of benefits following a remand and two decisions by the district court. This Court has found similarly that remand was an appropriate remedy where a plan participant's procedural rights were violated under ERISA due to "clear deficiencies in the integrity of Prudential's decision-making process." *Cowern v. Prudential Ins. Co. of Am*., 130 F.Supp.3d 443, 468 (D.Mass. 2015). This realization makes the result here, where cash for reimbursement is made available to the Settlement Payment Class subject to the terms of Settlement, all the more significant.

**B. The Skill and Experience of Counsel Support the Requested Fee**

The prosecution and management of a complex nationwide insurance benefits litigation requires unique legal skills and abilities with expertise in both ERISA and state insurance claims for benefits and class actions. As demonstrated by Class Counsel's experience, they were the perfect mix of class, health insurance and ERISA firms to achieve this result. Collins Decl., Rafik Decl., King Decl., Sams Decl., Feigenbaum Decl.. Class Counsel here are experienced and skilled practitioners in the ERISA and class action fields and have long and successful track records in such cases. *Id*. Their willingness and ability to undertake complex and difficult cases such as this, which are critically important to families seeking mental health insurance coverage for their children, and their commitment to the Litigation, were valuable to the case and settlement negotiations. *See Hill*, 2015 WL 127728, at *17 (noting plaintiffs' counsel's "experience and expertise contributed to the achievement of the Settlement"); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys ... consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion."). Here, Defendants have been represented by highly experienced lawyers from Morgan Lewis, a well-respected national law firm known for their vigorous defense in cases such as this one.

Notwithstanding this formidable opposition, Class Counsel were still able to settle the action on terms highly favorable to the Class. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their

representation."). Accordingly, this factor further supports the requested attorneys' fees.

### C. The Complexity and Duration of the Litigation Support the Requested Fee

ERISA claim for benefits class actions are notoriously complex and difficult to prove, and this case was no exception.[9] *See Wit v. United Behav. Health*, 58 F.4th 1080 (9th Cir. 2023) (decertifying a groundbreaking ERISA claim class action concerning coverage of mental health residential treatment and reversing the post-trial judgment that was in favor of the beneficiaries).

Many complex issues were raised in the Litigation. Collins Decl. ¶25. Among other things, Class Counsel needed to develop an understanding of the full landscape of mental health residential treatment industrywide and nationwide, as well as the health insurance coverage requirements and limitations that could apply. A comprehensive factual investigation was undertaken by Class Counsel who drafted detailed complaints. After defeating two motions to dismiss (one in *Brent S.* and one in *Steve C.*) discovery commenced, and Class Counsel propounded targeted discovery to Defendants and third parties. Based on the fruits of this discovery, which included tens of thousands of pages of documents and deposition testimony from nine witnesses, Plaintiffs filed for class certification, amended their complaint, and again faced another motion to dismiss. In connection with the two separate mediations, Class Counsel drafted mediation statements that set out Plaintiffs' strongest evidence based on the documents produced and testimony obtained. Defendants likewise set forth several arguments in connection with their motions to dismiss, including that ERISA procedures were not violated and that the coverage requests were properly denied. Additionally, Defendants would argue that even if the Class had their claims remanded for reprocessing, and Defendants determined during the reprocessing that they should have had their programs approved, the medical necessity of the stays could still be denied outright and would likely be limited to just weeks of coverage rather

[9] The Class is primarily composed of ERISA governed beneficiaries, however insureds not covered by ERISA are included in the Class as well.

than months. These and other matters required substantial attention by Class Counsel, who needed to analyze the factual record and consider their experience with similar individual ERISA litigation related to coverage of residential programs. Collins Decl. ¶25; *see also Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 113 (1st Cir. 2017) ("The district court concluded, accordingly, that Gateway was an 'educational setting,' and Stephanie does not offer an alternative reading of the Certificate that would square its exclusion of services rendered in educational settings with the coverage she seeks.").

Accordingly, the challenging legal headwinds and complexity of this Litigation support the conclusion that the requested fee is fair and reasonable in light of the results achieved for the Class.

**D. The Risk of Non-Payment Was Extremely High in This Case**

In a case undertaken on a contingent fee basis, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts v. TJX Cos., Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at *18 ("consider[ing] ... contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class"). Where, as here, Class Counsel "undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel." *CVS*, 2016 U.S. Dist. LEXIS 19135, at *28; *In re Lupron*, 228 F.R.D. at 97 ("[A] significant element of risk adheres to any litigation taken to binary adjudication").

From the outset of this case in 2017, it was apparent that Class Counsel faced very significant challenges to class certification and establishing liability and damages. Collins Decl. ¶¶13, 25. Thus, there was a significant risk that the case could be litigated for many years but result in no recovery for the Class and no payment for counsel. *See Wit*, 58 F.4th 1080 (9th Cir. 2023). Specifically, Class

Counsel faced substantial risks of having the case dismissed on the pending motion to dismiss, having Plaintiffs' motion for class certification denied, and ultimately proving that Defendants' denials violated ERISA or the terms of their policies and that the Class was entitled to a remand, and then recovery on that remand.

The landscape in the First Circuit, and elsewhere, has not been entirely favorable to plaintiffs challenging residential program claim denials under ERISA. *See Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 113 (1st Cir. 2017) ("The district court concluded, accordingly, that Gateway was an 'educational setting,' and Stephanie does not offer an alternative reading of the Certificate that would square its exclusion of services rendered in educational settings with the coverage she seeks."). For example, the Plaintiffs in *Stephanie C.* made two trips to the First Circuit and endured a remand to the insurance company, and ultimately lost. *See also Cotten v. Blue Cross & Blue Shield of Massachusetts HMO Blue, Inc.*, No. CV 16-12176-RGS, 2018 WL 6416813, at *2 (D. Mass. Dec. 6, 2018) ("...they were each treated in a wilderness program by mental health professionals after other therapies failed. BCBS's denial of coverage under the plans was therefore proper.") (*citing Vorpahl v. Harvard Pilgrim Health Ins. Co*., 2018 WL 3518511, at *2 (D. Mass. 2018) ("The text of the exclusion does unambiguously apply to the services provided by [the Outdoor Youth Treatment program] Red Cliff."); *Roy C. v. Aetna Life Ins. Co*., 2018 WL 4511972, at *2 (D. Utah 2018) ("[T]he Plan at issue in this case expressly and clearly excludes from coverage '[t]reatment in wilderness programs or similar programs' ..., and therefore, Plaintiffs' claim for benefits for treatment at Open Sky Wilderness Therapy is expressly and clearly excluded from coverage."). In addition, as stated previously, in ERISA actions remands can be ordered as the final remedy even after a victory in court, so a certified Class could have ended up back in front of BCBSMA for a determination on coverage. *See also, K.D. v. Harvard Pilgrim Health Care, et. al.,* 2022 WL 17586091 (D. Mass. Dec. 12, 2022); , *Doe v. Harvard Pilgrim Health Care, Inc.,* No. CV 15-10672, 2019 WL

3573523, at *9 (D. Mass. Aug. 6, 2019), aff'd, 974 F.3d 69 (1st Cir. 2020) (ERISA mental health adolescent residential treatment insurance coverage case where the district court initially ruled in favor of insurer, First Circuit reversed and ordered a remand to insurer for claim reprocessing, claim was again denied by insurer, insurer decision again upheld by district court and then upheld by First Circuit on second appeal).

Therefore, in the absence of a settlement, the Class faced a very substantial litigation risk with no guarantee of a greater recovery. Despite these very real risks, Class Counsel pushed forward and worked vigorously to achieve a significant result for the Class. Under these circumstances, the requested fee is fully appropriate.

**E. The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee**

The extensive time and effort expended by Class Counsel in prosecuting the Litigation and achieving the Settlement over the last five plus years also establishes that the requested fee is justified and reasonable. *See Hill*, 2015 WL 127728, at *19. Class Counsel's declarations detail their efforts in prosecuting Plaintiffs' claims. Courts considering lodestar frequently note that lodestar multiples of 1.0 to 4.0 are generally considered appropriate. *See, e.g., Relafen*, 231 F.R.D. at 82 (approving settlement with 2.02 lodestar multiple). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Tyco*, 535 F. Supp. 2d at 270 (*quoting Thirteen Appeals*, 56 F.3d at 307). In this case, the lodestar method, whether used directly or as a cross check on the percentage method, strongly demonstrates the reasonableness of the requested fee.

Here, Class Counsel spent 4,166.72 hours of attorney and other professional support staff prosecuting the Litigation. Collins Decl. ¶8, Rafik Decl. ¶¶66-73, Feigenbaum Decl. ¶67, King Decl. ¶23, Sams Decl. ¶7. Based on counsel's rates, their collective lodestar is $2,573,238. *Id.* A

$3,505,966.69 fee therefore represents a multiplier of less than 1.4 to counsel's lodestar. *Id*. The substantial time and effort devoted to this case was critical in obtaining the favorable result achieved by the Settlement and confirm that the fee request here is reasonable.

Moreover, the legal work on this action will not end with the Court's approval of the proposed Settlement. Based on the experience of Class Counsel with similar settlements, given the amount of money at stake for each Settlement Payment Class member, it is expected that hundreds of additional attorney hours will necessarily be expended assisting members of the Class with their Proof of Incurred Expense submissions, overseeing the claims process, responding to Class Member inquiries, assisting Settlement Payment Class members obtain necessary documentation, assisting Class members, when appropriate, with appeals of Settlement issues to the Special Master, and investigating Defendants' adherence to the injunctive relief provision in the Settlement. Collins Decl. ¶11.

**F. Awards in Similar Cases Support the Requested Fee**

As discussed above, Class Counsel's requested fee of an amount that equates to less than 33-1/3% of the conservative amount potentially available to the Settlement Payment Class, and which represents less than a 1.4 lodestar multiplier, is well within the range of fee awards in class action cases in this Circuit and elsewhere. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (finding a "multiplier of 2.02" to be "appropriate" based on comparison of cases); *see also Long v. HSBC USA Inc.*, No. 14 CIV. 6233, 2016 WL 4764939, at *12 (S.D.N.Y. Sept. 13, 2016) ("a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases") (quoting *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014)). Thus, this factor strongly supports the reasonableness of the requested fee.

**G. Public Policy Considerations Support the Requested Fee**

Public policy supports rewarding counsel for prosecuting ERISA benefits class actions, and health insurance coverage actions more generally. Health insurance cases rarely find their way to the

courts, with the majority of ERISA litigation focusing on disability cases. Rafik Decl. ¶42-49. This is due to several reasons. Claimants are often unpresented during the internal appeals process, and do not understand the limitations of the ERISA-adopted administrative scheme in litigation. *Id*. Accordingly, lawyers often must decline ERISA health insurance cases because the record is poorly developed prior to litigation. *Id*.

In addition, attorneys are often reluctant to file litigation where the amount of benefits in dispute is less than the time required to pursue the case to judgment. *Id*. It is difficult to find a way in which for attorneys to be paid for their work representing plaintiffs, as unlike disability claims where there is a larger pool for a potential recovery, reimbursement for services received over a defined period of time is limited. *Id.*

**H. The Endorsement of the Six Plaintiff families and the Reaction of the Class Support the Requested Fee**

As set forth in Plaintiffs' declarations, Plaintiffs carefully oversaw the prosecution and resolution of this Litigation and had a sound basis for assessing the reasonableness of the fee request. Plaintiffs fully support and approve that request. *See* Collins Decl. at Exs. A, B, C, D, E, and F.

Furthermore, the reasonableness of the requested fee is supported by the reaction of the Class. *See,* e.g., Hill, 2015 WL 127728, at *19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees."). As of January 31, 2023 the Settlement Administrator disseminated notice to all 239 families. Stinehart Decl. ¶5. To date, no Class Member has objected to any portion of the Settlement.[10] Only one request for opt-out was received, and that individual disputes whether he is in fact a Settlement Payment Class member. Rafik Decl. ¶55. This lends further support to the requested fee. *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 351 (finding "overwhelmingly positive" reaction of class to settlement and "quite low number of opt-outs" weighed

[10] Class Counsel will address any fee-related objections that are received in its reply papers, to be filed with the Court on March 30, 2023 [Docket No. 240 at ¶14].

in favor of requested fee).

In sum, Class Counsel respectfully submits that the fee requested here is reasonable and should be awarded.

## IV. The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained

Class Counsel's fee application includes a request for payment of litigation expenses that were reasonable and necessary to the prosecution of the Litigation. *See, e.g., In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."). In this case, there is no common fund, so there is no concern that the expenses would deplete a common fund. Thus, the amount of Settlement Payments that will be available to Settlement Payment Class members will be all the more reasonable.

Class Counsel's expense request of $94,033.31. is reasonable and should be approved. The vast majority of expenses related to remote depositions (no travel expenses were necessary) and mediation expenses. Feigenbaum Decl. ¶¶67, 68; King Decl. ¶¶23, 25; Sams Decl. ¶¶7, 9. These expenses were necessarily incurred in litigation and routinely charged to clients.

Class Counsel respectfully submits that these expenses were reasonably and necessarily incurred in prosecuting this action and should be awarded. *See, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred - which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review - are the type for which the paying, arms' length market reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."); *see also Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Here, Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert witness fees, electronic legal research,

photocopying, postage, and travel expenses, each of which is the type the paying, arms' length market reimburses attorneys.... As such, these expenses shall be reimbursed."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting "travel, mediation fees, photocopying, ... delivery and mail charges" are "routinely reimbursed").

**V. The Requested Service Awards to Plaintiffs Are Reasonable**

The Class also was advised that the Plaintiffs would ask the Court for service awards not to exceed a total of $100,000.00 in connection with their participation in the Litigation. These proposed service awards are fair and reasonable. Courts have widely recognized that service awards serve an important function in obtaining class-wide relief and encouraging class action settlements. *See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where as here, the named plaintiffs participated actively in the litigation"); *In re Compact Disc Min. Adver. Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); *Sheppard v. Consol. Edison Co. of New York*, No. 94-CV-0403(JG), 2002 WL 2003206, at *5-6 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving service awards). As one court noted: "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs . . . It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. Apr. 29, 2013).

As set forth in their declarations, Plaintiffs actively and effectively fulfilled their obligations as representatives of the Class, complying with the demands placed upon them, and providing valuable assistance to Class Counsel. Indeed, Plaintiffs were actively involved in these cases (*Brent S.* and *Steve*

*C.*) from start to finish. For example, Plaintiffs: (1) located and produced documents relevant to BCBSMA and their residential facilities; (2) searched for ESI in their email accounts; (2) spent hours on phone calls with Class Counsel; (3) reviewed and approved the multiple rounds of pleadings; (4) reviewed Defendants' discovery requests and assisted in providing responses; (5) reviewed key orders; (6) discussed case strategy with Class Counsel; (7) discussed settlement status; (8) attended a mediation; (9) prepared detailed and compelling documentary video statements of their experiences; and (10) provided input during the mediation process and participated in negotiation of the Settlement terms. *See* Collins Decl. at Exs. A, B, C, D, E, and F. Additionally, with the exception of Steve C., Kelly W., Jane Doe, and M.W., the remaining Plaintiffs all prepared for their depositions and went through the difficult process of being deposed concerning a very emotional and painful time in their family's life. These actions are precisely the type that support reimbursement to representative parties.

Thus, in recognition of Plaintiffs' time and effort expended for the benefit of the Class, Class Counsel respectfully requests a compensatory award of $20,000 each to the five[11] Plaintiff families of Brent S., Angie S., J. B., R. B., A. F., C. S., H. S., Steve C., Kelly W., and Jane Doe which will compensate them for their time spent in the prosecution of the *Brent S.* and *Steve C.* litigations over the past five plus years. This amount is reasonable and fully justified based on Plaintiffs' extensive involvement in this litigation and the amount of time devoted for the benefit of the Class. *See, e.g.*, *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (awarding $20,000 service awards to each of two named plaintiffs); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (granting a $50,000 service award where named plaintiff spent a considerable amount of time with Class Counsel working on the litigation.). Therefore, Class Counsel and Plaintiffs respectfully submit that these service awards should be granted.

## CONCLUSION

[11] M.L. joined very late in the litigation and will not share in this compensatory award.

For the reasons set forth above, Class Counsel respectfully requests that the Court enter an Order awarding them fees in the amount of $ 3,505,966.69, and litigation expenses in the amount of $94,033.31. Class Counsel further requests that the Court award $20,000 to each of the five Plaintiff families of Brent S., Angie S., J. B., R. B., A. F., C. S., H. S., Steve C., Kelly W., and Jane Doe ($100,000 total) in connection with their representation of the Class.

DATED: March 7, 2023

THE PLAINTIFFS, BY THEIR ATTORNEYS,

*/s/ Sean K. Collins*

Sean K. Collins (B.B.O. # 687158)
Law Offices of Sean K. Collins
184 High Street, Suite 503
Boston, MA 02110
Telephone: 855-693-9256
Fax: 617-227-2843
sean@neinsurancelaw.com

Mala M. Rafik (B.B.O. # 638075)
Rosenfeld & Rafik, P.C.
184 High Street, Suite 503
Boston, MA 02110
Telephone: 617-723-7470
Fax: 617-227-2843
mmr@rosenfeld.com

Brian S. King (PHV)
Brian S. King,
Attorney at Law
336 South 300 East,
Suite 200
Salt Lake City, UT 84111
Telephone: 801-532-1739
Fax: 801-532-1936
brian@briansking.com

Jonathan M. Feigenbaum
(B.B.O. #546686)
Law Offices of Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110
Telephone: 617-357-9700
Fax: 617-227-2843
jonathan@erisaattorneys.com

Ex Kano S. Sams II (PHV)
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Fax: 310-201-9160
esams@glancylaw.com

*Attorneys for Plaintiffs and the Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing this day, March 7, 2023.

/s/ Sean K. Collins________
Sean K. Collins